UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| William H. Otis,<br><br>Plaintiff,<br><br>v.<br><br>Harold A. Berge, Rose M. Berge, Cindy Lou Berge, Phillip Burkholder, Steven Corson d/b/a Corson Law Office, and Others,<br><br>Defendants. | Civ. No. 10-2155 (JNE/JJK)<br><br>REPORT AND RECOMMENDATION |

William H. Otis, *pro se*.

Hilary R. Stonelake, Esq., and Robert G. Benner, Esq., Dunlap & Seeger, P.A. for Defendants Harold A. Berge, Rose M. Berge, and Cindy Lou Berge.

Steven Corson, Esq., d/b/a Corson Law Office, counsel for Defendant Steven Corson d/b/a Corson Law Office.

This matter is before the Court on the motions of Defendants Harold A. Berge, Rose M. Berge, Cindy Lou Berge, and Steven Corson d/b/a Corson Law Firm's (collectively the "Defendants") to dismiss with prejudice Plaintiff William H. Otis' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. Nos. 10, 39.) The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1 and 72.2. For the reasons set forth below, this Court recommends that Plaintiff's Complaint be dismissed with prejudice.

1

## BACKGROUND

This action involves a series of alleged property conveyances that occurred between the spring of 1996 and winter of 2005 among Plaintiff, Defendants, and other parties. Plaintiff alleges that Defendant Charles Knudsen ("Knudsen") orally agreed to finance Plaintiff's purchase of a house in Harmony, Minnesota, in the spring of 1996. Under that agreement, Knudsen allegedly promised to loan Plaintiff $30,000 to purchase the house in exchange for Plaintiff's agreement to pledge the proceeds of the sale of property owned by Plaintiff in Mille Lacs County, Minnesota, in the amount of $15,000, and to assign to Knudsen his "Land Contract" for the sale of another property located in Polk County, Wisconsin, valued at $18,730. Plaintiff alleges that after the financing agreement was finalized, he entered into a purchase agreement with the owner of the Harmony property, Denis Yoder ("Yoder"). A closing took place in March 1996. At the closing, Knudsen paid $30,000 to Yoder, and a warranty deed to the property was granted to Knudsen, as the trustee of the Knudsen Trust. Plaintiff contends that the deed was recorded with the Fillmore County Recorder on April 2, 1996. This deed provided additional security to Knudsen in the event that Plaintiff failed to pay off the $30,000 loan. Upon full repayment of said loan, Knudsen would furnish a warranty deed to Plaintiff.

On July 1, 1996, Plaintiff allegedly paid off his debt to Knudsen. Knudsen received a check in the amount of $15,000 for the sale of the Mille Lacs property.

2

Plaintiff also assigned his rights as a seller in his land contract for the Polk County property to Knudsen. Plaintiff allegedly gave Knudsen a $5,000 check to be held as a deposit to ensure that Knudsen would receive at least $18,730 for the sale of the Polk County property. Despite the payments and assignments made on July 1, 1996, Knudsen allegedly never provided Plaintiff with a satisfaction of judgment or warranty deed to the Harmony property. Knudsen cashed both the $15,000 and $5,000 checks.

Over the next four years, Plaintiff purportedly made substantial improvements to the Harmony property. Plaintiff claims that Knudsen, as trustee for the Knudsen Trust, delivered to Plaintiff a quit claim deed to the Harmony property. That deed was never recorded. During the time that Plaintiff lived in the Harmony house, Plaintiff alleges that he engaged in a number of disputes with his neighbors, the Berges, over the boundary of his property. In 2001, Plaintiff moved to Iowa, and then to his current residence in Arkansas. When he moved, Plaintiff rented the Harmony property to Tom Osborne, who allegedly made additional improvements to the property.

In early 2003, Defendant Philip Burkholder, Fillmore County Treasurer, sent a letter to Knudsen indicating that back taxes from 1997 to 2002 were due on the Harmony property. In response, Knudsen allegedly sent a letter to Burkholder indicating that Plaintiff was the owner of the Harmony property (by way of quit claim deed), and that Burkholder should contact Plaintiff to collect the back taxes. In 2003, Burkholder allegedly told Plaintiff to send him the deed that

3

Knudsen gave him, and that he would hold the deed until all back taxes on the property had been paid. Once all back taxes were paid, Burkholder would then have the deed filed with the Fillmore County Recorder. By December 2003, Plaintiff allegedly paid off all back taxes and fines due on the property in the amount of $6,035.21. At that time, Burkholder did not record the deed. Instead, Plaintiff contends that the deed was sent to the Corson Law Office, where it has remained. Plaintiff claims that the Corson Law Office still refuses to return the deed. On or about June 10, 2004, Knudsen, as trustee of the Knudsen Trust granted a quitclaim deed for the Harmony property to himself, although he had already accepted payment from Plaintiff. This deed was recorded on June 21, 2004. Also on June 10, 2004, Knudsen and his wife, Irell, allegedly transferred the Harmony property by warranty deed to Harold A. Berge.

Plaintiff claims that although the Berges were on notice of Plaintiff's ownership of the Harmony property, the warranty deed was recorded on July 15, 2004. Plaintiff claimed that Knudsen received $45,000 from the Berges for the sale of the property. Corson served as Knudsen's attorney during the sale of the property to the Berges. Plaintiff alleges that the Berges granted a mortgage on said property to First Southeast Bank.

On or about August 25, 2005, the Berges allegedly granted Cindy Lou Berge, by way of warranty deed, a portion of the property at issue. The deed was recorded the next day. Plaintiff alleges that he has attempted to enter onto the

4

Harmony property ever since, but had been prevented from doing so by the Berges.

## PROCEDURAL HISTORY

Plaintiff commenced his first action in federal court in March 2005. That lawsuit included claims for: quiet title, fraudulent conveyance, equitable mortgage, ejectment, trespass, breach of contract, negligence, interference with Plaintiff's property rights, conversion, unjust enrichment, fraud and slander of title. Ultimately, the first lawsuit resulted in a dismissal without prejudice recommended by Magistrate Judge Arthur J. Boylan and adopted by Chief Judge Michael J. Davis. Judge Boylan acted *sua sponte* to dismiss Plaintiff's complaint under Fed. R. Civ. P. 41(b) for failure to prosecute, comply with federal and local rules of civil procedure, and obey a court order. He noted that despite the fact that "over three years have passed since the original Complaint in this case was filed on March 7, 2005. . . Plaintiff has failed to actively resolve this matter in a 'just, speedy, and inexpensive' manner and follow the federal and local discovery rules." (Doc. No. 13, Aff. of Hilary R. Stonelake in Supp. of Mot. to Dismiss ("Stonelake Aff."), Ex. B at 6.) Judge Boylan also found Plaintiff's conduct "to be egregious and adverse to Defendants, the Court, and other non-parties involved in this litigation . . ." (*Id.* at 8.) In addition, he found that Plaintiff offered incredible explanations and fraudulent documents to the Court. (*Id.*) Ultimately, Judge Boylan recommended dismissal of Plaintiff's Complaint without

prejudice, but noted that dismissal without prejudice "would not preclude Plaintiff from seeking relief in state court." (*Id.* at 11.)

After the federal action was dismissed on November 18, 2008, Plaintiff filed a Complaint with nearly identical factual allegations underlying substantially similar claims against the same Defendants in Ramsey County district court. Although somewhat incomprehensible, Plaintiff's Complaint included claims for: quiet title, fraudulent conveyance, conversion, eviction and/or ejectment, among others. Plaintiff's venue was transferred to Fillmore County district court in April 2009. One year later, on April 7, 2010, the Fillmore County state court issued an order granting Defendants' motion for dismissal with prejudice "based upon the pleadings, the arguments at hearing, and all of the files, papers, and things in the record."[1] (Doc. No. 13, Stonelake Aff., Ex. F.)

Despite the state court's prior dismissal with prejudice Plaintiff has filed yet another Complaint in federal court alleging nearly identical facts and substantially similar claims against the same Defendants. His Complaint includes claims for: quiet title, fraudulent conveyance, ejectment, trespass, negligence, interference with Plaintiff's property rights, conversion, and unjust enrichment.

---

[1] The state court order of dismissal does not specify the grounds for its dismissal with prejudice. But Defendants represent that the ground for dismissal was "the same dilatory, careless, and egregious conduct [Plaintiff] exhibited in the federal case." (Doc. No. 12, Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 4 and 6.)

**DISCUSSION**

**I.      Standard of Review**

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). But in so doing, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint states a plausible claim for relief if its

"factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## II.  Analysis

Defendants have moved to dismiss Plaintiff's claims based on the res judicata effect of the 2010 Fillmore County state court judgment of dismissal with prejudice.  "In examining whether a final decision in a state-court judgment precludes a subsequent federal court action, [this Court] must 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Zutz v. Nelson*, 601 F.3d 842, 847 (8th Cir. 2010) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  Under Minnesota law, res judicata applies as an absolute bar to a subsequent claim when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter.  *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004).  If these requirements are met, res judicata bars not only claims as to matters actually litigated, but also as to every matter that might have been litigated in the prior proceeding. *Care Inst., Inc. Roseville v. County of Ramsey*, 612 N.W.2d 443, 447 (Minn. 2000).  "The

8

doctrine of res judicata is not a mere matter of practice or procedure . . . It is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Fed. Dep't. Stores, Inc. v. Moitie,* 452 U.S. 394, 394 (1981) (citing *Hart Steel Co. v. R.R. Supply Co.,* 244 U.S. 294, 299 (1917)).

Defendants argue that Plaintiff's current lawsuit is barred by the 2010 Fillmore County state court's dismissal with prejudice of Plaintiff's claims against Defendants. This Court agrees. Plaintiff's current action against Defendants is precluded under the principles of res judicata because: (1) Plaintiff's state court dismissal with prejudice was a final judgment on the merits; (2) Plaintiff's state court action involved the same set of factual circumstances; (3) Plaintiff's state court action involved the same parties or their privies; and (4) Plaintiff had a full and fair opportunity to litigate this matter.

A comparison of Plaintiff's allegations in the 2010 Fillmore County state court proceedings with those alleged here makes clear that Plaintiff is attempting to relitigate his state court action in this forum. (*Compare* Doc. No. 1 and Stonelake Aff., Ex. D.) Plaintiff's instant Complaint is very similar to the Complaint dismissed in state court. It contains a nearly verbatim recitation of the facts underlying the Complaint, and many of the same claims contained in the state court action. (*Id.*) Importantly, all of Plaintiff's claims and allegations relate to the same piece of property and conveyances between Plaintiff and

9

Defendants. (*Id.*) Thus, this Court concludes that the two complaints arise from the same set of factual circumstances.

The record here also establishes that the Fillmore County state court action involved the same parties. Both the present lawsuit and the state court lawsuit were brought against the same Defendants: Harold A. Berge, Rose M. Berge, Cindy Lou Berge, and Steven Corson d/b/a Corson Law Firm, among others.

Nor can there be any dispute that the 2010 Fillmore County state court judgment was a final judgment on the merits. As noted above, a dismissal with prejudice—even where a case is dismissed with prejudice on a nonsubstantive ground, *e.g.* for lack of prosecution—operates as an adjudication on the merits entitled to preclusive effect. *Johnson v. Hunter*, 447 N.W.2d 871, 873 (Minn. 1989); *Paun v. Dolphin Pools, Inc.*, No. Civ. 06-2318, 2008 WL 73633, at *3 (Minn. Ct. App. Jan. 8, 2008) (same) (citing *Johnson,* 447 N.W.2d at 873); *see Milliman v. County of Stearns*, Civ. No. 05-2993 (JRT/RLE), 2006 WL 2583170, at *19 (D. Minn. Sept. 7, 2006) (stating that dismissal with prejudice for lack of prosecution is a decision on the merits for the purposes of res judicata) (citing *Johnson,* 447 N.W.2d at 873).

Finally, this Court is satisfied that the fourth res judicata element has been met. "The question of whether a party had a full and fair opportunity to litigate a matter generally focuses on whether there were significant procedural limitations in the prior proceedings, whether the party had the incentive to litigate fully the

issue, or whether effective litigation was limited by the nature or relationship of the parties." *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001). Here, nothing in the record indicates that there were significant procedural limitations in Plaintiff's 2010 Fillmore County proceedings. That Plaintiff could not "secure counsel" and proceeded *pro se* in the Fillmore County state court proceedings does not amount to any significant procedural or other limitations in his state court action. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *see also Heinsch v. Lot 27,* 399 N.W.2d 107, 109 (Minn. Ct. App. 1997) (stating that *pro se* litigants are held to same standard as attorneys and that unfamiliarity with procedural rules is not good cause to excuse untimely action). Plaintiff's complaints about Defendants' "belligerent" attitude during discovery or the "abbreviated" deadlines imposed by state court are insufficient to establish that there were any significant procedural or other limitations affecting the fundamental fairness of the state court proceedings or Plaintiff's opportunity to litigate in state court. (Doc. No. 27.) Finally, Plaintiff appears to suggest that he "withdrew his complaint" before Fillmore County state court dismissed his action and that "the proposition that the acts of a Court to dismiss after a withdrawal serves as a substitute for a hearing on the merits of the case is too thin in view that the dismissal made without trial if in fact it was a dismissal at all". (Doc. No. 27.) But there is no evidence of Plaintiff's actual or attempted withdrawal of his

state court claims.  Regardless, the record makes clear that the Fillmore County state court granted Defendants' motion to dismiss Plaintiff's complaint and did so with prejudice.  That Plaintiff did not have a trial prior to state court's dismissal of his claims is equally unavailing.  This element of res judicata requires a full and fair <u>opportunity</u> to litigate a claim, not either <u>actual</u> <u>litigation</u> or <u>notice</u> of the consequences of litigation choices—that is, the standard seeks to assure that there was an opportunity to litigate, a fact which cannot be doubted here.

Finally, there is no evidence that the Fillmore County state court action was limited by the nature or relationship of the parties.   As such, the Court concludes that Plaintiff had ample opportunity to litigate his claims in state court and all the elements of res judicata are present here.  In the end, Plaintiff's current lawsuit—his third attempt at litigating the same property dispute against the same Defendants—embodies Samuel Johnson's famous remark about second marriages:  "The triumph of hope over experience."[2]

## RECOMMENDATION

Based on the foregoing and all of the files, records, and proceedings

---

[2] James Boswell, *Life of Johnson* 444 (Oxford University Press 2008).

herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motions to Dismiss (Doc. Nos. 10 and 39), be **GRANTED**.

Date: November 15, 2010                                    *s/ Jeffrey J. Keyes*
                                                                                       JEFFREY J. KEYES
                                                                                       United States Magistrate Judge

Under Local Rule 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 29, 2010,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.